IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MARK ENSMINGER, and<br>TY LYONS,<br>Individually and on behalf of all others<br>similarly situated, | )<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | ) | Case No. 2:16-CV-02173 |
| FAIR COLLECTIONS &<br>OUTSOURCING, INC., | )<br>)<br>)<br>) | |
| Defendant. | )<br>) | |

**SUGGESTIONS IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Plaintiffs, by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 15(a) and Local Rule 15.1, and for their Suggestions in Support of Plaintiffs' Motion for Leave to File First Amended Complaint states as follows:

**INTRODUCTION**

Plaintiffs seek leave to amend their complaint against Defendant, Fair Collections & Outsourcing, Inc. ("Defendant") to add allegations that will permit Plaintiffs to pierce FCO's corporate veil and pursue their claims against Michael Sobota ("Sobota") and several related entities: Fair Collections & Outsourcing of New England, Inc.; FCO Worldwide, Inc.; FCO Logistics, LLC; and FCO Holding, Inc. (collectively "FCO"). Plaintiffs' First Amended Complaint alleges that these corporations are mere alter-egos of Sobota and should be treated as one person for the purposes of this action.

Plaintiffs argue that FCO is Sobota's alter-ego only for purposes of claims arising under

1

15 U.S.C. § 1692, the Fair Debt Collections Practices Act ("FDCPA"). The relevance here is that Plaintiffs have filed a putative class action, and the FDCPA limits the additional statutory award that the Court can grant the class to "$500,000 or 1 per centum of the net worth of the debt collector." § 1692k(a)(2)(B). This limit is intended to protect honest debt collectors from being bankrupted by accidental violations of the FDCPA. It was not, however, intended to reward debt collectors who create a corporate "shell game" to hide their assets, as alleged in Plaintiffs' Amended Complaint, a copy of which is attached hereto as Exhibit A.

## PROCEDURAL HISTORY

1. Plaintiffs filed this putative class action on March 18, 2016, alleging that Defendant violated the FDCPA by sending debt collection letters that included false, deceptive, and misleading representations about consumers' rights under the FDCPA. (Doc. 1, ¶¶ 8-14, 42-45, 48-49, 51).

2. Defendant filed a Motion to Dismiss for Failure to State a Claim on June 29, 2016 (Doc. 10), which was denied by this Court on November 23, 2016 on the grounds that it was "plausible that defendant's use of the Massachusetts Disclosure constitutes a false or misleading representation under § 1692e." (Doc. 18, p. 13).

3. The Court predicted that the Tenth Circuit would determine that the question of whether the language in a debt collection letter is confusing or misleading would be decided as a matter of law under the "least sophisticated" standard (Doc. 18, p. 5-6).[1]

4. This Court then held a scheduling conference on January 19, 2017 where Plaintiffs stated that they needed discovery to determine whether a party or parties other than Defendant should be liable to Plaintiffs in this action (Doc. 21, p. 1).

5. The Court ordered that the parties complete initial discovery "limited to: 1) the

---

[1] Plaintiffs' Amended Complaint conforms to the law of the case.

2

size of the class; 2) Defendant's net worth; and 3) identifying issues for a motion for leave to amend the complaint." (Doc. 21, p. 4).

6. Additionally, the Court established the date for Plaintiffs to amend their complaint as July 14, 2017.

7. With leave of the Court, Defendant filed a late answer in this case on March 10, 2017 but never filed a corporate disclosure statement as required by Federal Rule of Civil Procedure 7.1. (Doc. 26).

8. Pursuant to the Court's Scheduling Order, Plaintiffs move to amend their complaint to allege additional facts related to the identity of Defendant, FCO and Sobota.

## BACKGROUND

9. The letter that is the central issue in this case has been sent to "hundreds of thousands" of consumers during the relevant period for this case. The Court has already found that Plaintiffs stated a claim in alleging that the letter was a violation of the FDCPA. Thus, the primary issue presently before the Court is the identity of the person responsible for sending the letter.

10. Defendant is a Maryland statutory entity that was formed by Sobota in 2004 when Sobota and his brother terminated their previous venture, Pierce Hamilton and Stern.

11. Defendant is a wholly owned subsidiary of FCO Holding, Inc.

12. FCO Holding is another Maryland statutory entity that was formed in 2004 "to operate a collections agency" by the same attorney who assisted Sobota in forming the other corporate entities, named Sobota as an initial director, shares the same principal office as the other corporations, and owns Defendant, Fair Collections & Outsourcing of New England, Inc. and FCO Worldwide, Inc..

13. As of the original date of filing in this case, Sobota was the president and

registered agent for every FCO corporate identity, using Defendant's address as either the principal place of business, the address for the registered agent, or both. (MD Pub Doc.)

14. FCO also pays taxes on all operations at a single level, FCO Holding, Inc. (0040)

15. Defendant and FCO Worldwide, Inc. share the same webpage, which holds out to the public that these two entities are, for practical purposes, the same entity.

16. Defendant's web page further holds out that Defendant has either "28+" or "30+" years' experience with debt collection.

17. Sobota has "30+" years of experience in the debt collection industry, but the FCO corporate entities were all created between 2004 and 2007, so they can only have "28+" years of experience if they are alter-egos for Sobota.

18. Plaintiffs found no evidence of an independent existence, persona or activity for any of FCO's corporate identities, and Defendant has presented none.

19. Plaintiffs submitted discovery requests to Defendant, seeking information on Defendant's finances and seeking information related to corporate control.

20. Plaintiffs also submitted a third-party subpoena to Sobota, seeking essentially the same information. (Doc. 29)

21. Sobota did not respond to the subpoena, and Defendant largely refused to respond to Plaintiff's Discovery.

22. Plaintiff is not seeking dispositive findings of fact as discovery sanctions, but does request that the Court make the permitted inference that Defendant and Sobota opted not to respond because the answers would have been unfavorable to Defendant and Sobota.

23. Defendant disclosed that FCO's multiple identities are connected through common ownership and control, including annual dividends paid to FCO Holding, Inc.

24. In addition, there is an annual "management fee" almost 10 times the size of

4

Defendant's annual dividends payment, but Defendant refused to disclose to whom the "management fees" are paid.

25. The "management fee" works out to approximately 22% of Defendant's net income per year, and is listed as the second largest "operating expense" behind "salaries/benefits/taxes."

26. It is reasonable to infer that this "management fee" represents the same kind of "pass-through" income that is common in situations where a single person owns multiple corporations. *See Hillman v. Comm'r,* 114 T.C. 103, 114-115 (2000) ("The essence of these transactions is that petitioner, through entities in which he held an interest, earned and paid the same management fees; i.e., moved management fees from his "passive pocket" to his "nonpassive pocket. . . . [Sobota] has simply paid a management services fee to himself.").

27. The only reasonable inference is that the "management fee" is paid directly or indirectly to Sobota.

28. FCO recently settled a class action claim, *Martin v. Fair Collections and Outsourcing, Inc.,* Case No. 8:14-cv-03191-GJH, (D. Md.) (order granting final approval dated July 25, 2016), which required Defendant to pay $108,900.00 to create a settlement fund and Attorneys' Fees and Expenses in the amount of $140,287.72. No motion to enforce has been filed, so it is a fair inference that the funds were paid from some source.

29. FCO recently entered a consent judgment with the District of Columbia in *District of Columbia v. Fair Collections & Outsourcing, Inc.,* Case No. 2015 CA 008479 B, (entered June 6, 2016), which required Defendant to pay the District of Columbia some $90,000 and pay restitution to harmed consumers. Plaintiff has found no motion to enforce, so it is a fair inference that the funds were paid from some source.

30. Sobota signed both the class action settlement agreement and the consent

judgment on behalf of FCO.

31.   FCO's financials show no sign of money being paid on the settlement or consent judgment from Defendant.

32.   Based on the available evidence, it is a reasonable inference that Sobota, the president and authorized signer for Defendant, directly or indirectly paid the settlement and judgment amounts.

33.   There is no meaningful distinction between the FCO corporate entities and Sobota for FDCPA purposes. FCO is a single entity made up of multiple alter egos of Sobota, operating for the purpose of running a debt collection company for Sobota's personal financial gain and for which Sobota is personally responsible.

34.   Defendant has been moving funds among the alter egos through dividends and possibly other methods, including millions of dollars per year in "management fees."

35.   Defendant is a mere alter ego of Sobota that neither retains nor represents the net value of the true defendant, Sobota.

36.   Based on the available evidence, a reasonable person could infer that Sobota drafted or approved the use of the letters alleged in Plaintiffs' Complaint.

37.   Plaintiffs are filing this motion within the time directed by the Court in good faith and with the proper motive of ensuring that the real parties in interest are before the Court.

38.   There will be no undue prejudice to FCO, Sobota and/or Defendant because no meaningful discovery has occurred and the case is still in its early stages.

## ARGUMENT

Courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). A party is typically granted leave to amend under this rule unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure

deficiencies by amendment previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005).

Plaintiffs seek leave to amend their complaint in order to add allegations related to the corporate veil of FCO and allege that Sobota, directly and through his various corporate facades, is liable under the FDCPA. The motion has been filed within the deadline established by the Court for filing amendments and within the Court's scheduling order directing the parties to identify issues for this motion.

The parties completed initial discovery, per the Court's order, and Plaintiffs have identified the issue that FCO is a series of corporate facades concealing the identity and net worth of Sobota. Some of these corporate structures may facilitate tax planning or state common law tort protections, but under the FDCPA they primarily function as a veil that hides Sobota's identity and net worth.

Defendant, Sobota, and FCO undoubtedly will assert that Plaintiffs' First Amended Complaint is futile and, under that standard, the Court should deny leave to amend. "A proposed amendment would be futile if the amended complaint would be subject to dismissal." *Szczygiel v. Kansas*, No. 14-CV-3011, 2015 WL 630570, *2 (D. Kan. Feb. 12, 2015) (internal citations omitted). "The party asserting futility of the amendment has the burden to establish futility." *Id.*

In this case, the amendment is not futile for two reasons: (1) FCO is Sobota's alter ego, and (2) adhering to the corporate structure would promote fraud and injustice. The Tenth Circuit apples a two-part test to discern whether a plaintiff may pierce a corporate veil:

> (i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and
>
> (ii) would adherence to the corporate fiction sanction a fraud, promote injustice,

or lead to an evasion of legal obligations.

*Nat'l Labor Relations Bd. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1051-52 (10th Cir. 1993) (*citing United States v. Diviner*, 822 F.2d 960, 964-65 (10th Cir. 1987); *Seymour v. Hull & Moreland Eng'g*, 605 F. 2d 1105, 1111 (9th Cir. 1979)).

### a. FCO and Sobota are a single Debt Collector Under the FDCPA

A "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." § 1692a(6). "[A] shareholder, officer, or employee of a corporation . . . personally involved in the debt collection at issue, . . . may be held personally liable as a debt collector without piercing the corporate veil." *Brumbelow v. Law Offices of Bennett and Deloney, P.C.,* 372 F. Supp. 2d 615, 618 (D. Utah 2005). The collection at issue here involves the sending of hundreds of thousands of form letters to hundreds of thousands of consumers. Clearly, this is a management level decision, and Plaintiffs' discovery has only uncovered one person who can reasonably be said to have been in control of that decision: Sobota.

Sobota is the president, authorized "representative," registered agent and final authority for the various corporate entities making up FCO. Most of these entities were all formed at or near the same time by Sobota, and operated out of the same office. Sobota and the various corporate facades making up FCO share the same business purposes, facility, staff and resources, including structuring FCO's finances to Sobota's benefit by paying "management fees" instead of salary or dividends. FCO is really just a front for Sobota, with nothing more than the thinnest corporate fiction standing between him and consumers like Plaintiffs and the proposed Class.

FCO hides the net worth of FCO and Sobota through a corporate "shell game" with FCO's profits. Defendant does not have a low "book value" because it is unprofitable; Defendant keeps its "book value" low by hiding profits under a different FCO shell. And Sobota is the

8

brains and power behind all of FCO's various shells. The evidence shows that FCO shuffles millions in profits every year to Sobota and/or one of the other shells. Congress could not have intended that debt collectors render themselves "judgment proof" by creating paper-thin corporate shells to hid money in. FCO's various "corporate identities" are merely that: identities that exist purely on paper.

Thus, a reasonable person could infer that FCO and Defendant are alter egos of Sobota, thereby satisfying the first element of the test to pierce the corporate veil in the Tenth Circuit.

### b. Maintaining the Corporate Fiction Would Sanction Fraud, Promote Injustice and Lead to an Evasion of Legal Duty

A reasonable person also could infer that the alter ego structure of Sobota and FCO are a fiction that is designed to lead to an evasion of legal duty and promote injustice.

"Two wrongs do not make a right." Here, Defendant has suggested that it is protected from liability under the FDCPA because of Defendant's low "book value." However, Defendant's "book value" is low because FCO transfers all the profit out of the corporate shell that produces it. It is not that Defendant is *incapable* of paying a judgment or class settlement. Essentially, FCO's defense is that it should not be held liable for deceptive practices because it deceptively hid its assets. It flies in the face of reason that committing a second act of deception should protect anyone from liability for the first.

Maintaining the corporate fiction would sanction fraud in that it would permit FCO to escape liability for dishonest behavior by engaging in dishonest behavior.

Maintaining the corporate fiction would promote injustice and lead to evasion of a legal duty because it would signal to other debt collectors that they could escape liability for the very evils Congress intended to extinguish through nothing more than paying a few hundred dollars in filing fees to create new corporate shells.

## CONCLUSION

Plaintiffs do not seek a determinative ruling that Defendant's corporate veil should be pierced – that is a determination for another time later in the litigation. However, in light of the facts available at this time, Plaintiffs should be given leave to amend their Complaint to add these parties and pursue their theory. Given the compelling overlap between Sobota and FCO and the apparent effort to conceal assets, the Court should grant Plaintiffs leave to amend.

Dated July 14, 2017                                Respectfully submitted,

                                                 */s/ Keith Williston*
                                                 Keith Williston Bar #78645
                                                 4041 NE Lakewood Way, Suite 200
                                                 Lee's Summit, Missouri 64064
                                                 Tel. (816) 246-7800
                                                 Fax. (855) 523-5905
                                   **ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 14, 2017 I electronically filed the foregoing with the Court which will send notification of the same to all counsels of record, specifically:

Sean M. Sturdivan KS #21286
Matthew D. Quant KS #26253
Sanders Warren & Russell LLP
9401 Indian Creek Parkway, Suite 1250
Overland Park, Kansas 66210
Phone: (913) 234-6100 Fax: (913) 234-6199
Email: s.sturdivan@swrllp.com
Email: m.quant@swrllp.com

James Brodzik
Hinshaw & Culbertson LLP
521 W. Main Street, Suite 300
Bellview, Illinois 62222-0509
Phone: 618-310-2335
Fax: 618-277-1144
Email: jbrodzik@hinshawlaw.com

**Attorneys for Defendant**

                                              */s/ Keith N. Williston*
                                              Keith N. Williston